IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES M. EAST, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:20CV650 |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff James M. East, III ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed his applications for DIB and SSI on June 11, 2015, alleging a disability onset date of February 16, 2006. (Tr. at 162.)[2] His claims were denied initially (Tr. at 100-23, 185-92), and that determination was upheld on reconsideration (Tr. at 124-58). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).
[2] Transcript citations refer to the Administrative Record [Doc. #21].

Law Judge ("ALJ"). (Tr. at 220-21.) On December 21, 2017, Plaintiff, along with his mother, attended the subsequent telephone hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 162.)

On June 20, 2018, the ALJ issued a partially favorable decision, ruling that Plaintiff became disabled on June 11, 2015. (Tr. at 170.) However, the Appeals Council reviewed and vacated the ALJ's decision on October 18, 2018. (Tr. at 177-184.) The Appeals Council then remanded the case to an ALJ for de novo review. (Tr. at 177.) On April 24, 2019, Plaintiff, his mother, and an impartial vocational expert attended the hearing on remand, at which Plaintiff chose to appear without an attorney or other representation. (Tr. at 21.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 33), and on March 19, 2020, the Appeals Council denied Plaintiff's request for a review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

Thereafter, Plaintiff, proceeding pro se, filed a Complaint in this Court. [Doc. # 2.] Defendant filed an Answer [Doc. # 20], and Plaintiff then filed a Motion to Appoint Counsel and a request to construe said motion as a Motion for Judgment [Doc. # 23]. This Court denied his motion to appoint counsel but agreed to construe the remainder of the motion as a motion for judgment. (See Order, Apr. 15, 2021 [Doc. # 24].) Defendant then filed its Motion for Judgment on the Pleadings [Doc. # 27], and Plaintiff responded [Doc. # 30]. Accordingly, this matter is now ready for review.

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the

3

ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairments; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is

---

[3] "The Social Security Act comprises two disability benefit programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

4

working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps and establishes at step three that the impairment 'equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since February 16, 2006, his alleged onset date. (Tr. at 24.) Plaintiff therefore met his burden at step one of the sequential-evaluation process. (Tr. at 24.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> deep vein thrombosis, peripheral vascular disease, Blount's disease, and obesity[.]

(Tr. at 24.)[5] The ALJ found at step three that none of these impairments, individually or in combination, were severe enough to meet or equal a disability listing. (Tr. at 25.) Therefore, the ALJ assessed Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform medium work . . . except that he is limited to: lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking six hours in an eight-hour workday; occasionally balancing, stooping, kneeling, crouching, or crawling; never climbing ladders; occasionally climbing stairs; and avoiding concentrated exposure to hazards.

---

[5] The ALJ also found that Plaintiff had a medically determinable impairment of depression but found that its effect on basic work activities was minimal and was thus not a severe impairment. (Tr. at 24.) In support of this determination, the ALJ relied on Plaintiff's activities, including that he "addresses his personal care needs with some minor difficulties, prepares meals, drives a vehicle, handles a saving account, uses a checkbook, writes and draws for a hobby, is able to follow written instructions, and finishes what he starts" and "spends time talking with others on the phone, goes to church, does not have problems getting along with family, friend, neighbors, authority figures, or others, and has never been fired or laid off from a job because of problems getting along with others." (Tr. at 24-25.) In addition, that ALJ relied on the opinion evidence of the State agency consultant at the initial level, Dr. Grover, who similarly found that any limitations were mild and that Plaintiff did not suffer from a severe mental impairment. Finally, in addition to Plaintiff's activities and the opinion of Dr. Grover, the ALJ also noted that Plaintiff had received "very little treatment" for his depression and that he "consistently had normal mental status findings." (Tr. at 25.) The medical records support this finding. Thus, the ALJ's reasoning is clear, and the ALJ's determination is supported by substantial evidence.

6

(Tr. at 26.) At step four of the analysis, the ALJ determined that Plaintiff had no past relevant work. (Tr. at 32.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and Social Security Rulings 83-14 and 85-15, he could perform other jobs available in the national economy. (Tr. at 32.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 33.)

This action for judicial review has been brought by the Plaintiff *pro se*. This Court is required to construe such *pro se* pleadings liberally to allow for the development of a potentially meritorious claim. Haines v. Kerner, 404 U.S. 519, 520 (1972). Here, Plaintiff raises two challenges to the ALJ's decision. First, he contends that the ALJ's decision is not supported by substantial evidence. (Pl.'s Compl. at 3.) Second, he argues that the ALJ abused his discretion. As to this contention, Plaintiff appears to specifically challenge the ALJ's denial in light of the prior ALJ decision that partially granted relief on June 20, 2018. (Pl.'s Mot. at 4-5.) As to this second argument, the record reflects that the earlier 2018 ALJ decision found Plaintiff disabled from June 2015 forward, but the Appeals Council found that this decision was not supported by substantial evidence and contained an error of law. The Appeals Council therefore remanded the case for further consideration, resulting in the ALJ decision presently before the Court. Plaintiff challenges the present ALJ decision and seeks "reinstatement" of the prior 2018 ALJ decision. After a thorough review of the record, the Court finds that neither of Plaintiff's challenges merit remand.

A. Substantial Evidence

Plaintiff first asserts that the ALJ's decision is not supported by substantial evidence, but he has not shown where in the decision the failure lies. Plaintiff claims to be disabled by

his chronic back and leg pain brought on by Blount's disease, as well as a history of pulmonary embolisms and deep vein thrombosis ("DVT"). (Tr. at 27.) Although the ALJ determined that Plaintiff suffered from the severe impairments of deep vein thrombosis, peripheral vascular disease, Blount's disease, and obesity (Tr. at 24), the ALJ further found, based on the evidence as a whole, that Plaintiff's impairments were not disabling as defined by the Act (Tr. at 27-31).

As set out above, the ALJ first determined that at step three of the sequential analysis that the medical evidence did not support a conclusion that Plaintiff's impairments met or equaled a listed impairment, as contemplated by 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 25.) For example, although Plaintiff has a diagnosis of deep vein thrombosis, his medical records do not support the required findings of extensive brawny edema, superficial varicosities or statis dermatitis, with recurrent or persistent ulceration. (Tr. at 26.) Substantial evidence supports the ALJ's conclusion. Although Plaintiff's records indicate that he experienced some edema in his legs, no doctor noted "extensive brawny edema" or the additional symptoms required for Plaintiff to meet the listing for deep vein thrombosis. (See Tr. at 583, 594, 645-50, 704-06, 722, 928, 933, 942-43, 1201, 1216, 1225-26, 1230, 1238, 1251, 1256, 1261, 1272, 1280, 1290.) Similarly, Plaintiff's medical records do not show the kinds of symptoms required for him to meet the listings for peripheral arterial disease or any other condition. (Tr. at 26; see Tr. at 704-06, 722, 928, 933, 942-43, 1201, 1216, 1225-26, 1230, 1238, 1251, 1256, 1261, 1272, 1280, 1290.)

Next, the ALJ considered how the severity of Plaintiff's symptoms might limit his ability to work. (Tr. at 27.) The ALJ acknowledged that Plaintiff and Plaintiff's mother

8

testified that Plaintiff "experiences pain, weakness, swelling, and poor circulation in his legs, pain and swelling in his ankles, back pain, shortness of breath upon exertion, lightheadedness, pain and swelling in his feet, and difficulty standing for longer than 10 minutes." (Tr. at 27.) The ALJ, however, contrasted Plaintiff's testimony with his statements collected in a Function Report, in which Plaintiff stated that he addresses his personal care needs with some minor difficulties, prepares meals, drives a vehicle, can handle a savings account and other banking tasks, writes and draws for a hobby, and can follow instructions. (Tr. at 27.) The ALJ concluded that Plaintiff had "described daily activities that are inconsistent with [Plaintiff's and his mother's] allegations of disabling symptoms and limitations." (Tr. at 27.) Although Plaintiff and his mother describe multiple limitations in their separate Function Reports, the ALJ's conclusion that Plaintiff's testimony about the severity of his symptoms was undermined by the functional abilities described in the Function Reports is supported by substantial evidence. (See Tr. at 385, 400, 402-03, 422.)

In addition to citing Plaintiff's Function Reports, the ALJ also relied on the medical records, including treatment notes and x-rays. The ALJ discussed at length medical records from December 2013, December 2014, April 2015, September 2015, October 2015, December 2015, July 2016, August 2016, February 2017, May 2017, November 2018, and March 2019. (Tr. at 28-30.) In these exams, Plaintiff generally had full strength, full range of motion, and no or mild edema in his lower extremities, and x-rays showed no abnormalities and relatively well-preserved disc spaces in his lumbar spine. (Tr. at 28-30.) In this regard, nearly all of Plaintiff's treatment record recount a full range of motion in his lower extremities and only occasional pain upon palpation. (Tr. at 639, 933, 1216, 1230, 1238-39.) He was

further noted to ambulate without difficulty. (Tr. at 639.) In some examinations he had mild tenderness and decreased range of motion in his ankles, but no treatment records reflect worse symptoms. (Tr. at 1251, 1256, 1261, 1272.)

With regard to Plaintiff's DVT, the ALJ noted that Plaintiff suffered a pulmonary embolism in 2013, but by 2014 was no longer taking anticoagulant medication. (Tr. 28, 29.) Plaintiff suffered an additional incidence of DVT and pulmonary embolism nearly two years later, in November 2015, but was stable after he resumed anticoagulant medication. As noted by the ALJ, the medical records reflect that Plaintiff repeatedly failed to comply with the medication and treatment regimen. (Tr. at 28-30.) After his hospitalization in November 2015, Plaintiff failed to return for follow up appointments, and did not return to his primary care provider until six months later in July 2016. At that time, Plaintiff requested a letter from the doctor to a potential employer, stating that he would be able to stand frequently at a job. (Tr. at 1122, 1198.) The doctor refused to provide the letter unless Plaintiff agreed to comply with the treatment plan, which included taking his anti-coagulation medication and returning for required checks. (Tr. at 1122.) Plaintiff agreed and returned a week later having resumed the medication, and his provider gave him a letter to give to his employer (Tr. at 1124). This request undermines Plaintiff's testimony that his impairments prevent him from doing any work at all. Moreover, Plaintiff did not return for any medical treatment for six months. When he returned for a visit in February 2017, he said that he had not been taking the anti-coagulate medication and told his provider that he was not planning to take it. (Tr. at 29, 1215.) Plaintiff's remaining medical records for 2017, 2018, and 2019 do not reflect further treatment for or issues regarding DVT.

The ALJ ultimately concluded that "despite his non-compliance with medical treatment, the claimant generally had normal physical examination findings, including full strength and range of motion in his extremities, normal range of motion in his lumbar spine, negative straight leg raise testing, normal sensory and cardiovascular findings, and no or minimum swelling in his legs." (Tr. at 31.) Considered as a whole, the medical records, which were reviewed in detail by the ALJ in the decision, support the ALJ's conclusion that Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms was inconsistent with the medical treatment records.

Finally, the ALJ also considered the opinion evidence. The ALJ gave "great weight" to the opinion of physical consultative examiner, Peter Morris, M.D. (Tr. at 30.) Dr. Morris's examination showed results consistent with Plaintiff's medical records, particularly in areas regarding his range of motion, ability to walk, strength, and presence of little-to-no edema in his legs. (Tr. at 30, 640-42.) Dr. Morris also noted that Plaintiff gave "obviously poor effort" during testing. (Tr. at 28-29, 641.) Dr. Morris ultimately concluded that Plaintiff was capable of medium work, with standing/walking up to six hours, sitting up to six hours, occasional climbing stairs, balancing, stooping, kneeling, crouching, and crawling, and no climbing ladders or scaffolds. The ALJ included all of these limitations in the RFC. Considering the consistency of Dr. Morris's examination with the overall results of Plaintiff's longitudinal medical record, the ALJ explained his decision to give "great weight" to Dr. Morris's opinion, and that opinion provides further evidence supporting the ALJ's determination. In addition, the ALJ also relied in part on the opinions of the State agency consultant, Dr. Cox and Dr. Sandhu, who also generally found Plaintiff capable of medium work. (Tr. at 30-31, 108, 135-

11

36.)[6]  In sum, the ALJ explained the basis for the decision based on Plaintiff's activities, the medical records, and the opinion evidence, Plaintiff identifies no basis to disturb the ALJ's finding of non-disability.

In his filings, Plaintiff cites SSR 16-3p, and asserts that "[i]t is not necessary to provide information on the intensity, persistence, and limiting effects of the symptoms the listing does not specifically state otherwise and all other required findings are present." (Pl. Br. at 5.) However, this appears to be an assertion pulled from the 2018 ALJ decision, which is not a correct statement of the law in determining the RFC. Indeed, the Appeals Council reversed and remanded the 2018 ALJ decision because it contained this error misstating the provisions of SSR 16-3p in setting the RFC. (Tr. at 182.) Instead, under the applicable guidelines, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. In Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit recently clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029

---

[6] The ALJ gave only partial weight to these opinions. Specifically, Dr. Cox did not include any postural limitations, but the ALJ included the postural limitations suggested by the record and by Dr. Morris's consultative examination; Dr. Sandhu limited Plaintiff to only four hours of standing/walking, but the ALJ relied on the record and Dr. Cox's opinion and Dr. Morris's consultative examination to find six hours instead. (Tr. at 31.)

12

> (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Arakas, 983 F.3d at 95–96. Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about his pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit his ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 416.929(c)(3) and 20 C.F.R. § 404.1529:

> (i)  [Plaintiff's] daily activities;
> (ii) The location, duration, frequency, and intensity of [plaintiff's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [his] pain or other symptoms;
> (v)  Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [his] pain or other symptoms;
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.[7]

In the present case, in the 2019 decision before the Court, the ALJ followed this two-step process and considered the entire case record and explained his reasons for deviating from Plaintiff's statements regarding the impact of his symptoms on his ability to work, as discussed at length above. Thus, the present decision does not include an error of law, the regulations were properly applied, and the decision is supported by substantial evidence. Where, as here, substantial evidence supports the ALJ's conclusions, it is not for the Court to re-weigh the evidence or reconsider the ALJ's determinations. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, but rather whether the ALJ's determination is supported by substantial evidence. As recently noted by the Supreme Court in Biestek v. Berryhill, 139 S. Ct. 1148 (2019), "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' . . .It means—and means only—'such relevant evidence as a reasonable

---

[7] SSR16-3p does also note that in evaluating the Listings at step three of the sequential evaluation process,
   To decide whether the impairment meets the level of severity described in a listed impairment, we will consider an individual's symptoms when a symptom(s) is one of the criteria in a listing to ensure the symptom is present in combination with the other criteria. If the symptom is not one of the criteria in a listing, we will not evaluate an individual's symptoms at this step as long as all other findings required by the specific listing are present. Unless the listing states otherwise, it is not necessary to provide information about the intensity, persistence, or limiting effects of a symptom as long as all other findings required by the specific listing are present.
However, this is specific guidance for evaluating Listings. In contrast, in setting the RFC, the ALJ will "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record" using the two-step process outlined above. SSR 16-3p at *11.

mind might accept as adequate to support a conclusion.'" Accordingly, the Court finds no basis for remand.[8]

B. Abuse of Discretion and Prior Determination

Plaintiff also specifically challenges the ALJ's 2019 decision in light of the prior 2018 ALJ decision partially granting relief. To the extent that Plaintiff is challenging the basis for the ALJ's 2019 decision or the application of SSR 16-3p, the Court has reviewed the ALJ's determination as set out at length above. For the reasons set out above, the ALJ's 2019 decision is supported by substantial evidence, the 2019 ALJ did not commit a legal error in

---

[8] The Court notes that the ALJ proceeded at step five using the Medical Vocational Guidelines (the "grids") rather than the testimony of a vocational expert. At step five of the sequential analysis, the government must prove in one of two ways that a claimant remains able to perform other jobs available in the community. Where a plaintiff suffers from purely exertional limitations, the ALJ may apply the grids, contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, to establish that claimant's vocational ability. See McLain v. Schweiker, 715 F.2d 866, 870 n. 1 (4th Cir.1983). If a plaintiff can perform the full range of work within one of the exertional categories defined by 20 C.F.R. § 404.1567, i.e., sedentary, light, medium, heavy, or very heavy, the Fourth Circuit has held that the grids adequately encompass the plaintiff's ability to perform basic work activities. See Hammond v. Heckler, 765 F .2d 424, 425–26 (4th Cir.1985). If, on the other hand, the claimant suffers from significant nonexertional limitations, the grids are not determinative, and the ALJ must consider vocational expert testimony. McLain, 715 F.2d at 870 n. 1. However, "certain additional nonexertional limitations may have very little effect on the range of work remaining that an individual can perform, . . . because relatively few jobs in the national economy require these skills" at the given exertional level. Sherby v. Astrue, 767 F. Supp. 2d 592, 597 (D.S.C. 2010). In this case, the ALJ acknowledged that the RFC limitation to only occasional stooping and crouching could affect the range of medium work, but further found that it would not affect the availability of light and sedentary work, which would also remain available to Plaintiff, as set out in SSR 83-14 and 85-15. See Titles II and XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments, SSR 83-14, 1983 WL 31254, at *3-4 (S.S.A. 1983); Titles II & XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1985 WL 56857, at *1, *3 (S.S.A. 1985). Significantly, Ruling 83–14 notes that "[r]elatively few jobs in the national economy require ascending or descending ladders and scaffolding." Likewise, Ruling 83–14 further notes that "to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch." Ruling 83–14 also specifically provides that the "inability to ascend or descend scaffolding, poles, and ropes" is among the "restrictions which have very little or no effect on the unskilled light occupational base." SSR 83–14, 1983 WL 31254, at *5. In addition, SSR 85–15 notes that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." SSR 85–15, 1985 WL 56857, at *6. Similarly, SSR 85–15 explains that kneeling "is a relatively rare activity even in arduous work" and that limitations on the ability to kneel are "of little significance in the broad world of work." 1985 WL 56857 at *7. This Ruling also notes that, if a claimant can crouch occasionally, "the sedentary and light occupational base is virtually intact." Id. Thus, there does not appear to be any error in the ALJ's reliance on the grids in this case.

15

applying SSR 16-3p, and the interpretation of SSR 16-3p suggested by Plaintiff from the 2018 ALJ decision is not a correct statement of the law.

To the extent Plaintiff nevertheless seeks to have reinstated the original 2018 ALJ decision that granted him disability payments beginning on June 11, 2015, or at least to receive the benefits from that date until the Appeals Council's decision to vacate the order, this Court cannot review or revive a non-final earlier decision. The Act provides for judicial review of Social Security cases only after a final decision of the Commissioner. Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g); see also Hill v. Colvin, 2016 WL 727177 at *6 (M.D.N.C. Feb. 23, 2016) ("Plaintiff's factual allegations substantively involve the Commissioner's determinations about whether she owed an overpayment, whether she must repay any overpayment she received, and the Commissioner's efforts to recover the overpayment. Therefore, insofar as Plaintiff seeks review of the ALJ's decision or the Commissioner's efforts to collect the overpayment, those claims arise under the Social Security Act. As a result, the Court could potentially have subject matter jurisdiction to review the ALJ's decision or the Commissioner's efforts to collect the overpayment only if it arises under the jurisdictional grant provided by 42 U.S.C. § 405(g)."). A final decision by the Commissioner requires the Appeals Council to review the ruling issued by the ALJ. According to Section 404.949 of Title 20 of the Code of Federal Regulations:

> After it has reviewed all the evidence in the administrative law judge hearing record and any additional evidence received, subject to the limitations on Appeals Council consideration of additional evidence in § 404.970, the Appeals Council will make a decision or remand the case to an administrative law judge. The Appeals Council may affirm, modify or reverse the administrative law judge hearing decision or it may adopt, modify or reject a recommended decision.

20 C.F.R. § 404.979. If the Appeals Council remands the case to an ALJ for rehearing, the Council's remand decision will not be considered final.

In Plaintiff's case, when the Appeals Council decided to review and then vacate the original 2018 ALJ's partially favorable decision, the grant of benefits was revoked, eliminating any alleged entitlement to benefits. The Council determined that the 2018 ALJ who had granted benefits had made an error of law and that the decision was not supported by substantial evidence, and therefore ordered the second hearing, in which an ALJ would conduct a *de novo* review of Plaintiff's claim. (See Tr. at 179-84.) As explained above, the Act allows judicial review only of final decisions by the Commissioner. The Appeals Council's vacatur of the original ALJ's decision is an intervening decision in a process not yet complete, and this Court does not review internal agency-level proceedings. See Bass v. Astrue, No. 1:06-cv-591, 2008 WL 3413299 at *4 (M.D.N.C. Aug. 8, 2008) ("The Court does not review internal agency-level proceedings, and therefore will not address whether the ALJ complied with specific provisions of the Appeals Council's remand order"); Pauley v. Berryhill, 3:17-cv-02411, 2018 WL 4402026 at *10 (S.D.W.V. Aug. 27, 2018) ("42 U.S.C. § 405(g) does not provide the Court with authority to review intermediate agency actions that occur before the issuance of the agency's "final decision."); Bishop v. Colvin, 2016 WL 4132326 (W.D.Va. Aug. 3, 2016) ("After the ALJ's first opinion, the Appeals Council issued a remand order vacating the hearing decision and returning the case to the ALJ for further consideration consistent

17

with the order. The ALJ held another hearing, issued another opinion, and Bishop again petitioned the Appeals Council for review. Bishop's request was denied, thus making the second ALJ opinion the final decision from which Bishop has appealed to this court. Whatever the ALJ did or did not do in his first opinion is a nullity, as it has been vacated by the Appeals Council. It is the duty of this court to evaluate the ALJ's final opinion to determine whether substantial evidence supports that decision." (internal citations omitted). [9] Thus, under the Act, there is no basis for this Court to reinstate the 2018 ALJ decision or review the decision of the Appeals Council to vacate that original grant of benefits. Plaintiff's claim will therefore be denied.

IT IS THERFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment [Doc #23] be DENIED, that

---

[9] The Court also notes that the 2018 ALJ decision is not entitled to any weight under Acquiescence Ruling 00–1(4) and Albright v. Commissioner of SSA, 174 F.3d 473 (4th Cir.1999). Under Acquiescence Ruling 00–1(4), "where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period." AR 00–1(4) (S.S.A. Jan. 12, 2000); see also Lively v. Sec. of Health & Human Servs., 820 F.2d 1391, 1392 (4th Cir.1987) (noting that res judicata applies to Social Security disability cases and "prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final"); Albright, 174 F.3d at 477–78 ("To have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large—that final agency adjudications should carry considerable weight."). In this case, the prior ALJ determination was vacated by the Appeals Council, and "the ALJ was not required to give weight to the findings made in the [earlier] decision, because it was vacated and not the final agency decision of the Commissioner." Monroe v. Colvin, No. 7:13–CV–74–FL, 2014 WL 7404136 at *2, *10 (E.D.N.C. Dec. 30, 2014); see also Batson v. Colvin, No. 7:14–CV–48–D, 2015 WL 1000791 (E.D.N.C. Mar. 5, 2015) ("Here, Albright and AR 00–1(4) did not require the second ALJ to consider the first ALJ's decision because that decision had been vacated, and thus no finding remained to be considered in the subsequent determination.").

Defendant's Motion for Judgment on the Pleadings [Doc #27] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 14th day of February, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge